## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

THOMPSON BENALLY and ELLIOTT J. CLARK,

        Plaintiffs,

vs.

ROSENFELT & BUFFINGTON, P.A. d/b/a THE              No. 06-CV-0592 JCH/RHS
INJURY LAW CENTER, DANIEL M.
ROSENFELT, and FORREST G. BUFFINGTON,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion for Partial Summary Judgment on All of Plaintiffs' Claims for Damages Relating to Proceeds from American Family Insurance Company Policy Since Defendants' Actions Provided the Greatest Recovery of Those Proceeds to Plaintiffs, filed February 28, 2008 [Doc. 133].  The Court having considered the motion, briefs, and relevant law, and being otherwise fully informed, finds that Defendants' motion is not well taken and will be denied.

### FACTUAL BACKGROUND

Viewed in the light most favorable to the Plaintiffs, the facts, as supported by the evidence submitted by the parties, are as follows.  On January 28, 2005, Lorita Benally, Sylvanna Clark, Sylvania Clark, and Tom Grandson were killed in a motor vehicle accident on U.S. Highway 160, a public highway near Red Mesa, Arizona, which is within the boundaries of the Navajo Nation.  Among those who survived the decedents were Elliott Clark (Lorita Benally's son and Sylvanna and Sylvania Clark's brother), Pauline Grandson (Tom Grandson's mother), Henry Benally, Sr. (Lorita Benally's father), and Steven Clark (Sylvanna and Sylvania

Clark's father).

Prior to the accident, on January 14, 2005, Tom Grandson and Lorita Benally had entered into a contract of insurance with GEICO to insure their 2004 Dodge Stratus. As part of that insurance contract, GEICO agreed to provide underinsured motorist coverage. The insurance contract was effective at the time of the accident. Lorita Benally had also entered into a separate contract with American Family Insurance Company ("American Family") to insure a different vehicle. As part of that insurance contract, American Family also agreed to provide underinsured motorist coverage. The insurance contract identified itself as a Utah policy, and it too was effective at the time of the accident.

The decedents were occupying the 2004 Dodge Stratus, the vehicle insured by GEICO, when they were killed in the January 28, 2008 accident. After learning of the accident, the agent who sold the American Family policy to Lorita Benally originated a claim for proceeds of the underinsured motorist coverage on March 2, 2005. The American Family adjuster assigned to the claim, Patti Bucko, immediately began investigating the facts of the accident, even before she had contact with Defendant Rosenfelt & Buffington, P.A. ("the Firm"). During the course of her investigation, Ms. Bucko had several phone conversations with Christine Mumbower, a paralegal with the Firm, on March 17, 2005 and April 14, 2005. Ms. Mumbower also forwarded to Ms. Bucko a letter of representation on March 18, 2005 and three pages of the GEICO policy on March 25, 2005.

Then, on June 8, 2005, Ms. Bucko left a voicemail message for Ms. Mumbower informing her that American Family was "offering up the $300,000" in underinsured motorist benefits as well as $5,000 each in "AD&D benefits" for Lorita and her two daughters. That same day, Ms. Mumbower sent a letter to Ms. Bucko confirming her understanding that the

2

policy limit of $300,000 in underinsured motorist benefits would be paid out, as well as

Accidental Death benefits of $5,000 on behalf of Lorita and each of her two daughters.  Ms.

Mumbower advised that "[o]nce agreement [was] reached on a distribution to the beneficiaries,"

the Firm would send her a formal demand.  Ms. Bucko testified that after offering its policy

limits on June 8, 2005, American Family waited for the Firm to advise how the funds were to be

distributed.

Less than a week later, on June 14, 2005, Defendant Daniel M. Rosenfelt ("Rosenfelt")

of the Firm sent a letter to Elliott Clark, Pauline Grandson, Henry Benally, Sr., and Steven Clark

("the addressees").  The letter informed the addressees that "under the law of the State of

Arizona," they each appeared to be entitled to receive a portion of the insurance proceeds that

would be paid out under the decedents' policies.  The letter noted that only Elliott Clark and

Thompson Benally were clients of the Firm at that time, and that Thompson Benally

"represent[ed] the interests of Lorita Benally and her family" but was not a "statutory

beneficiary."  Rosenfelt indicated that he hoped that the addressees would "agree to work

together, with [the Firm], to accept the funds available."  Acknowledging that there was "an

inherent conflict of interest" if the Firm represented more than one of the addressees, Rosenfelt

advised that the Firm could represent them nonetheless if they agreed to waive any claim that

they might have that the Firm was "unfair."  Rosenfelt also assured the addressees that the Firm

would do its best to propose a settlement that was "fair" but warned that "state law and the terms

of the policies" had to be taken into account, which could lead to results that the addressees did

not feel were equitable.

Ms. Bucko testified that she had another conversation with Ms. Mumbower on

September 21, 2005 and that Ms. Mumbower told her that the Firm had determined how they felt

the proceeds should be distributed but that there was no guarantee that the beneficiaries would agree. Rosenfelt determined that the insurance proceeds should be distributed in accordance with Arizona wrongful death law. Accordingly, the Firm reported to American Family that the money should be divided with $100,000 for each Sylvanna and Sylvania Clark, for a total of $200,000, going to Stephen Clark and $100,000 for Lorita Benally divided between Henry Benally, Sr. and Elliott Clark. In an October 17, 2005 letter to American Family, the Firm specified that Henry Benally, Sr. should receive $40,000 and that Elliott Clark should receive $60,000.

On October 25, 2005, American Family held a claim committee meeting with regard to the underinsured motorist proceeds from Lorita Benally's policy. The claim committee included Patti Bucko (the claims adjustor), Royce Bonds (the casualty claims desk manager), Dave Gangaware (the branch claims manager), and Joel Babcock (an attorney in American Family's Denver office specifically charged with handling claims arising under Utah policies). The committee determined that everything was "in order" and that checks should be issued to the payees identified by the Firm upon the receipt of releases from the payees.

Of the $300,000 in underinsured motorist proceeds from American Family, Stephen Clark received $200,000, Henry Benally received $40,000, and Elliott Clark received $60,000.

## STANDARD

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). In applying this standard, the record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *McKnight v. Kimberly Clark Corp.*,

149 F.3d 1125, 1128 (10th Cir. 1998).

To carry its initial burden, the moving party need not negate the nonmoving party's claim. *See Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997). "Instead, the movant only bears the initial burden of 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party meets its burden, the burden shifts to the nonmovant to go beyond the pleadings and to set forth specific facts that would be admissible in evidence from which a reasonable trier of fact could find for the nonmovant. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). If there is no genuine issue of material fact in dispute, then a court must next determine whether the movant is entitled to judgment in its favor as a matter of law. *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996).

## DISCUSSION

In their motion for partial summary judgment, Defendants contend that because American Family Insurance Company ("American Family") had valid and complete coverage defenses to claims under Lorita Benally's policy, the company's decision to pay its policy limits was essentially a windfall for the claimants. Defendants assert that their actions in "not calling attention to American Family's mistaken coverage determination" provided the greatest possible recovery to Plaintiffs. Accordingly, they argue that Plaintiffs were not legally entitled to the American Family proceeds, that Defendants acted in Plaintiffs' best interest, and that no genuine issue remains for trial in this regard.

More specifically, Defendants argue that they protected Plaintiffs' interests by not insisting upon distribution of the American Family underinsured motorist proceeds under Navajo law. They claim that even if they had determined that Navajo law was applicable, which they

do not concede, a request that Navajo law apply to the distribution "would have immediately placed the file in the hands of an attorney (Mr. Babcock)."  Defendants claim that upon review by an attorney, the coverage determination mistake "would have been caught."  Additionally, Defendants claim that American Family would have declined to pay out proceeds under Navajo law absent a declaratory judgment determining that Navajo law was indeed applicable.  This, they contend, would again "invite American Family . . . to assert its valid coverage defense, thereby jeopardizing the Plaintiffs' ability to collect **any** proceeds."  Similarly, Defendants claim that demanding the application of Navajo law to the distribution of proceeds would have ultimately necessitated an interpleader, because Navajo wrongful death law is not well defined. Defendants contend that local counsel hired by American Family to handle the interpleader would have undoubtedly determined that there was no coverage available under the policy.  For these reasons, Defendants urge the Court to determine that the application of Arizona law to the distribution of the American Family proceeds was in Plaintiffs' best interest, providing them with the greatest possible recovery.

While Plaintiffs do not necessarily concede that American Family had valid coverage defenses under Lorita Benally's policy, they assert that whether or not American Family made a proper coverage determination is simply irrelevant.  They note that American Family's coverage determination was made prior to and independent from any determination as to how the proceeds would be distributed.  Indeed, they reference testimony from both Patti Bucko, the claims adjustor, and Mr. Babcock, the in-house attorney assigned to claims arising under Utah policies, to this effect.

While Defendants suggest that "after Plaintiffs had already agreed to distribute the proceeds of the policies pursuant to Arizona law, American Family Insurance Company agreed

to pay its policy limits," this chronology and Defendants' inference therefrom is unsupported by the record.   First, Defendants have not pointed to evidence establishing that Plaintiffs "agreed" that Arizona law would apply to the distribution of proceeds.  More importantly, it is undisputed that American Family "offered up" its policy limits long before Defendants advised American Family how the proceeds should be distributed or disclosed their position that Arizona law applied to the distribution.  The evidence establishes that Ms. Bucko contacted Defendants on June 8, 2005 "offering up" the policy limits.  Yet it was not until late September that the Firm advised American Family as to how the insurance proceeds should be distributed.  An accurate chronology, together with Ms. Bucko and Mr. Babcock's testimony that the coverage inquiry and the allocation inquiry were independent inquiries, provides some evidence that American Family's coverage determination would have been unaffected by different instructions from the Firm concerning the proper allocation of proceeds.

A genuine issue of material fact also remains with regard to whether Mr. Babcock or another attorney would have determined that no coverage was available upon further review of the file.  Ms. Bucko testified that if she had received an order from a Navajo district court appointing a personal representative, she would have referred the file to the legal department before paying out the proceeds.  She may have also referred the file to the legal department if Defendants had advised that the proceeds were to be distributed to certain claimants under Navajo law.  However, Mr. Babcock, the American Family attorney assigned to claims arising under Utah policies, *was* consulted in this case with regard to the payment of the proceeds under Lorita Benally's policy.  In fact, he sat on the claim committee that evaluated the coverage claim and ultimately determined that everything was "in order."  Given these facts, a reasonable trier of fact could find that the policy limits would have been available even if Defendants had sought

7

distribution under Navajo law.

Additionally, American Family's interpleader counsel may well have determined, just as Ms. Bucko and other American Family employees did, that coverage was available. More importantly, an interpleader was not the only available mechanism for distributing the proceeds according to Navajo law. As Plaintiffs suggest, Defendants could have had personal representatives appointed for each of the decedents' estates, and a court would have thereafter determined how the proceeds should be allocated according to Navajo law without American Family's involvement. Defendants have done nothing to rebut Plaintiffs' argument that personal representatives could have been appointed for the estates of the decedents. And, significantly, Ms. Bucko testified that American Family does, upon request, pay insurance proceeds to such personal representatives. There is no reason apparent to the Court why American Family would have refused to do so in this case. As such, a reasonable trier of fact could find that American Family would have paid its policy limits to personal representatives, leaving it to a court to make the ultimate determination as to how the proceeds should be allocated.

Finally, Plaintiffs have come forward with at least some affirmative evidence that the insurance proceeds would have been paid out even if Defendants had advocated for the application of Navajo law. For example, Ms. Bucko testified that as long as American Family receives releases from "legitimate claimants," the determination as to the allocation of the proceeds is made by counsel. And, again, Ms. Bucko also testified that American Family sometimes pays proceeds to personal representatives of insured decedents' estates. It simply cannot be said, as a matter of law, that Plaintiffs would not have benefitted from Defendants advocating for the application of Navajo law to the distribution of the American Family proceeds.

In their Reply, Defendants' cite *Jones v. Psimos*, 882 F.2d 1277 (7th Cir. 1989) for the proposition that plaintiffs must establish a "valid claim" to the proceeds in the underlying matter in order to show any damages for legal malpractice.   In *Psimos*, the plaintiff sued the attorney who represented her in divorce proceedings and who failed to properly perfect an appeal of the trial court's property distribution order. *Id.* at 1278-80.  In that case, the Court determined that the plaintiff was required to "establish that there was a valid claim in the underlying action which was allegedly mishandled by the defendant attorney" so that the attorney's negligence could be said to have proximately caused the injury. *Id.* at 1281.  The Seventh Circuit ultimately considered what the Indiana appellate court's decision would have been if the appeal had been perfected and determined that the appellate court could not possibly have found the property distribution order to be an abuse of discretion. *Id.* at 1284.

But *Psimos* is not on all fours with this case.  The plaintiff in *Psimos* would have only had a "valid claim" to certain property if the appellate court had determined that the property distribution order was an abuse of discretion.  Here, the proper wrongful death survivors -- or those persons entitled to benefit from a wrongful death action on behalf of the insured decedents -- had a valid claim to their portion of any proceeds paid out by the decedents' insurers.  This is true regardless of whether Defendants considered the insurers' coverage determinations to be erroneous.  American Family interpreted its own policy, determined that coverage was available, and alerted Defendants that it was "offering up" its policy limits.  Once the underinsured motorist proceeds became available under the American Family policy, the proper wrongful death survivors under the applicable law had a valid claim to these proceeds. *See* 12 Steven Plit, et al., Couch on Insurance § 171:6 (3d ed. 2008) (stating that benefits for wrongful death in the form of underinsured motorist proceeds "should be paid to the decedent's survivors . . . in

9

accordance with the applicable wrongful death statute"); *Williams v. Williams*, 531 P.2d 924 (Ariz. Ct. App. 1975) (holding that because the insured decedent's sons would have been legally entitled to a share of damages if there had been a wrongful death action rather than a satisfaction under the decedent's uninsured motorist coverage, the sons stated a claim for damages related to the distribution of the uninsured motorist proceeds to the decedent's spouse); *Holt v. Grange Mut. Cas. Co.*, 683 N.E. 2d 1080, 1084 (Ohio 1997) (holding that settlement proceeds under an uninsured motorist provision were to be distributed among those persons who were entitled to benefit from a wrongful death action).

The Court acknowledges that the proper wrongful death survivors have not yet been identified and the law applicable to the distribution of insurance proceeds has not yet been determined in this case.  These issues are taken up by other motions pending before this Court.  What remains clear, however, is that the proper wrongful death survivors had a valid claim to their portion of any available insurance proceeds, even though Defendants considered the payment of such American Family's proceeds to be a mistake.  Further, it is undisputed that Plaintiff Elliott Clark would have been a wrongful death survivor of at least one of the decedents, Lorita Benally, regardless of whether Arizona, Utah, or Navajo law applied to the distribution.  And although Plaintiff Thompson Benally may not have been a wrongful death survivor, depending on which law applied to the distribution, his claims are founded in part on Defendants' alleged duty to maximize proceeds available to Elliott Clark, an undisputed wrongful death survivor.

Based on the foregoing, the Court determines that Plaintiffs have met their obligation to come forward with some evidence that the American Family underinsured motorist proceeds would have been paid out even if Navajo law was applied to the distribution of the proceeds.

Further, a reasonable trier of fact could determine that had Defendants distributed the American Family proceeds under Navajo law, rather than under Arizona law, Plaintiffs would have received a greater percentage of the proceeds.  Accordingly, viewing the facts in the light most favorable to the Plaintiffs, a genuine issue remains as to whether Defendants' actions related to the distribution of the American Family underinsured motorist proceeds caused injury to Plaintiffs.

**CONCLUSION**

**IT THEREFORE IS ORDERED** that Defendants' Motion for Partial Summary Judgment on All of Plaintiffs' Claims for Damages Relating to Proceeds from American Family Insurance Company Policy Since Defendants' Actions Provided the Greatest Recovery of Those Proceeds to Plaintiffs, filed February 28, 2008 [Doc. 133], is hereby **DENIED**.

Dated this 30th day of September 2008.

JUDITH C. HERRERA
UNITED STATES DISTRICT JUDGE